John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086
email: jhall@hutchlegal.com

Attorneys for Las Vegas Jaycees
Senior Citizen Mobile Home Park

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>URSULA LICHTENSTEIN,<br><br>          Debtor.<br>_____<br><br>URSULA LICHTENSTEIN,<br><br>          Plaintiff,<br><br>v.<br><br>SUSAN BROWNE, an individual, and CHARLES M. MCKINNON, JR. an individual,<br><br>          Defendants. | Case No.: 25-10340-nmc<br>Chapter 13<br><br>Adversary Case No. 25- 01110 -nmc<br><br>**EMERGENCY MOTION TO**<br><br>  **1.  INTERVENE IN ADVERSARY PROCEEDING AS A PLAINTIFF**<br><br>  **2.  FOR EX PARTE PRE-JUDGMENT WRIT OF ATTACHMENT AGAINST MANUFACTURED HOME WITHOUT NOTICE OR HEARING PURSUANT TO NRS 31.017**<br><br>**ON AN ORDER SHORTENING TIME** |

Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees"), through its counsel

Hutchison & Steffen, PLLC, moves this Court for an order granting Jaycees the right to

intervene in the adversary proceeding commenced by Debtor Ursula Lichtenstein pursuant to B.R. 7024 and F.R.C.P. 24.  A copy of the proposed Complaint in Intervention is attached to the motion as Exhibit A.

Jaycees seeks to intervene as a Plaintiff to pursue a fraudulent transfer claim under NRS 112 against the manufactured home that is already subject of this adversary proceeding.  Because of the real risk that Jaycees will lose any rights to recover against the fraudulently transferred manufactured home, the Court should hear this motion on an order shortening time.

Specifically, Jaycees, has a judgment against the Debtor that it should be able to collect against property that was fraudulently transferred from the Debtor prior to petitioning the bankruptcy court.  The manufactured home is already the subject of this adversary proceeding wherein the Debtor claims that it home was "mistakenly" transferred.  Jaycees, therefore, has a direct interest in the subject of this proceeding whose interests are not represented or protected by the other parties to the action and should be allowed to intervene as a matter right under FRCP 24(a).  Specifically, to the extent that Debtor is not found to have "mistakenly" transferred the home to her daughter, Jaycees must be allowed to pursue its state law rights to execute against the home now titled in the name of Defendants.

Jaycees also seeks a pre-judgment writ of attachment pursuant to NRS 31.017 without hearing or notice based on the claim for transfer claim.

////

////

////

////

////

This motion, which is supported by the following points and authorities and the declarations of Todd W. Prall and Robert Dekan, attached as Exhibits B and C to the motion, needs to be heard on shortened time per the Declaration of Todd W. Prall.

Dated this 2nd day of May 2025.

HUTCHISON & STEFFEN, LLC

By: */s/ Jeffrey R. Hall*
_____
John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145

*Attorneys for Las Vegas Jaycees*
*Senior Citizen Mobile Home Park*

## **POINTS AND AUTHORITY**

**1.    Factual Background.[1]**

Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees") is a non-profit entity that owns a mobile home community located at 505 West Harmon Avenue, Las Vegas, Nevada 89103 (the "Park").  Debtor was a resident at the Park and owned the manufactured home that sits on Space #305 (the "Leased Space").

Jaycess commenced eviction proceedings against debtor in or about March 2024 based on Debtor's actions in the Park that violated her lease agreement, the Park's rules and Chapter 118B

---

[1] The facts set forth herein are supported by the allegations set forth in the Complaint in Intervention, the exhibits attached thereto, and the declarations of Todd W. Prall and Robert Deken which essentially verify the allegations in the Complaint in Intervention.

of the Nevada Revised Statutes that governs leases in spaces in mobile home parks and manufactured communities.  The Complaint alleged that the Debtor had committed acts that violated criminal statutes concerning the exploitation of an elderly person under Nevada Revised Statute 200.5092(3), which also constitutes a nuisance and is a basis for terminating a lease and seeking unlawful detainer under Nevada Revised Statute 118B.200(1)(f).

On or about October 23, 2024, and then again on November 12, 2024, the Las Vegas Justice Court held a bench trial in the unlawful detainer matter.  On December 17, 2024, the Justice Court issued a minute order finding that Debtor was a nuisance in the Park as defined in NRS 118B.190(1)(b) and NRS 118B.200(1)(f) and specifically found that Debtor had exploited an older person in the Park by obtaining control of their money, assets and property and converting such property assets or money.

On January 2, 2025, the Justice Court entered formal Findings of Fact, Conclusions of Law, and Order in which the Court ordered that a permanent writ of restitution should issue but should be stayed for five judicial days from the date it is issued.

The Findings of Fact, Conclusions of Law, and Order also ordered that Jaycees would have until December 31, 2024, to submit its Memorandum of Costs pursuant to NRS 69.040, and gave Debtor until January 7, 2025, to file any objection or motion to retax those costs.

On December 31, 2024, Jaycees submitted its Memorandum of Costs, which pursuant to NRS 69.040, sought $31,431.82, including $28,290.00 in attorney fees pursuant to NRS 69.030. A true and correct copy of the Memorandum of Costs is attached as Exhibit 5. Debtor did not file an objection or motion to retax the costs by January 7, 2025.

On January 8, 2025, the Justice Court issued a Permanent Writ of Restitution ordering that the Premises be restored to Jaycees.

On January 16, 2024, Jaycees submitted a proposed judgment, which was approved as to form by Debtor's litigation counsel. Because the amount of reasonable attorney fees is left to the discretion of the justice court pursuant to NRS 69.040 and Nevada law, the proposed judgment left the amount of the attorney fees blank.

On January 21, 2025, Debtor filed its petition for bankruptcy with this Court prior to the justice court determining the amount of the reasonable fee or entering a judgment. Jaycees seeks relief from the automatic stay to allow the justice court to enter the final judgment on Jaycees requested fees and costs as allowed by NRS 69.040 and as determined by the justice court so that the amount of liability the Debtor has can be established. Thereafter, Jaycees and the Debtor submitted a stipulation to the bankruptcy court that lifted the automatic stay to allow the justice court to enter a judgment on the attorney fees and costs pursuant to NRS 69.040. Per this Court's order on the party's stipulation, a judgment for $31,156.87 was entered in the justice court.

Residents of Jaycees – like Debtor was prior to the justice court issuing its decision and issuing a Writ of Permanent Restitution – are required to own their manufactured homes. Debtor was no exception. According to the Manufactured Housing Division's records, Debtor acquired the manufactured home that is located at Space No. 305, which is identified as a 1994 Champion Infinity II, with the serial number 09946364387AB (the "Manufactured Home") by issuance of the title on December 21, 2021.

Just after the justice court issued its decision on or about December 17, 2024, Debtor apparently signed documents to transfer title of the Manufactured Home solely to her daughter Susan Browne and thereby removing herself from title. A new title has since been issued titling the Manufactured Home in the name of Susan Brown and Charles McKinnon. In the adversary proceeding, Debtor alleges that this was an accident and that Debtor intended to get the title of the

Manufactured Home solely in her own name.  Jaycees alleges that the Debtor intentionally and fraudulently transferred the Manufactured Home in order to avoid paying the judgment that she knew would be entered against her.

Jaycees has been informed that the Manufactured Home could be sold by Brown and/or McKinnon at any time.  Currently, there is nothing that would protect Jaycees rights, or any other person's rights, to collect its judgment against the fraudulently transferred Manufactured Home as it would be allowed to do were the Manufactured Home in the name of the Debtor.  Because of the impending possibility of a sale, Jaycees requests the right to both intervene in this action and seek a pre-judgment writ of attachment against the Manufactured Home pursuant to NRS Chapter 31.

## 2.   Legal Arguments

### A.   Jaycees should be granted leave to intervene as a matter of right under BR 7024 and FRCP 24(a).

"Since Federal Rule of Civil Procedure 24 is incorporated by Federal Rule of Bankruptcy Procedure 7024 without modification, the analysis of intervention in an adversary proceeding in a bankruptcy case is no different than the analysis of intervention in an ordinary federal civil action." *In re Sundquist*, 570 B.R. 92, 96 (Bankr. E.D. Cal. 2017) (citing *Bustos v. Molasky*, 843 F.3d 1179, 1184 n.4 (9th Cir. 2016).

Federal Rule of Civil Procedure 24(a)(2) requires a court, upon timely motion, to permit intervention of right by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  When analyzing a motion to intervene of right under Rule 24(a)(2), the

court applies a four-part test:

(1)    the motion must be timely;

(2)    the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action;

(3)    the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and

(4)    the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011).

### *(1) The motion is timely*

"Timeliness is 'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990)). "Courts consider three factors to determine whether a motion to intervene is timely: (1) the stage of the proceedings when the motion is filed, (2) the prejudice to other parties, and (3) the length and reason for any delay." *PEST Comm. v. Miller*, 648 F. Supp. 2d 1202, 1211–12 (D. Nev. 2009), aff'd, 626 F.3d 1097 (9th Cir. 2010) (citing *League of United Latin Am. Citizens*, 131 F.3d at 1302).

In the *PEST Communications v. Miller*, the Court found that the motion was timely where it was filed just over two months after Defendant filed his answer and to the amended complaint and that proposed intervenors concurrently filed an proposed opposition to the pending motion for partial summary judgment and a proposed countermotion for summary judgment. 648 F. Supp. 2d at 1212. Under these circumstances the court found that the motion was brought during the "early state of the proceedings" and it did not "delay or prejudice" the other parties. *Id.*

////

Here, Jaycees' motion has been filed prior to the defendant's answer and only a month or so after the complaint and amended complaint was filed. The proceedings have only just begun. The motion is timely.

***(2) Jaycees has a significantly protectable interest relating to the property that is the subject of the action.***

Jaycees has a significantly protectable interest in the property that is the subject of the adversary proceeding. Regardless of whether the Manufactured Home is brought back into the Debtor's estate or not, Jaycees has a strong basis for being able to execute the debt of the Debtor against the Manufactured Home because the facts support Jaycees claim that the transfer of the Manufactured Home to Debtor's daughter was a fraudulent transfer done specifically to avoid paying Jaycees' judgment. Were it not for Debtor's petition for bankruptcy, Jaycees would have already commenced a fraudulent transfer action in state court. The Debtor has no other assets with which to pay the judgment.

***(3) Jaycees is so situated that the action may as a practical matter impair or impede its ability to protect that interest.***

Jaycees has been left in a difficult situation. The bankruptcy keeps Jaycees from bringing a fraudulent transfer claim because the Debtor would be a necessary party. The Debtor appears to be solely interested in getting the home back into the estate to continue to keep creditors from attaching it. Jaycees protects its interests except through the bankruptcy proceedings.

***(4) Jaycees' interest is inadequately represented by the parties to the action.***

None of the other parties to the adversary proceeding can represent Jaycees' interest. Neither the Debtor nor Browne or McKinnon can represent Jaycees' interests. Indeed, their

interests are all opposed to Jaycees because none of them want to allow Jaycees' to recover its judgment and/or obtain a writ of attachment to recover the judgment from the proceeds of any sale of the Manufactured Home. Jaycees needs to be allowed to represent its interests in the adversary proceeding.

**B. Even if there was no basis for leave to intervene as a matter of right, Jaycees should be granted leave to intervene under FRCP 24(b).**

Even if Jaycees cannot seek intervention as a matter of right, the Court should allow Jaycees to intervene under FRCP 24(b). Jaycees may seek to intervene if the Court determines that Jaycees "has a claim or defense that shares with the main action a common question of law or fact." Even "[w]here a party may not intervene as a matter of right, the trial court may consider whether permissive intervention is appropriate." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). The district court's discretion in determining whether to allow permissive intervention is broad. *Id.* If the initial requirements of 24(b)(1) or 24 (b)(2) are met, the court can consider other factors in determining whether to allow permissive intervention. *Id.* These factors include the nature of the intervenors' interests, their standing to raise relevant issues, the legal position they intend to advance and its relation to the merits of the case, whether their interests are adequately represented by other parties, and whether intervention will unduly delay the litigation. *Id.*

Jaycees' claim for fraudulent transfer has overlapping issues with the current litigation and therefore meets the threshold requirements of Rule 24(b)(2). Jaycees' position is directly related to the general merits of the case and Jaycees' interests are not represented by other parties. To the extent Jaycees does not have a basis for intervention as a matter of right under Rule 24(a), the Court should allow Jaycees to intervene under Rule 24(b).

**C.  Jaycees should be granted and order issuance of a pre-judgment writ of attachment against the Manufactured Home and serve it on Browne, McKinnon, and the Nevada Manufactured Housing Division without notice or hearing pursuant to NRS 31.017.**

Nevada law allows a party to seek a pre-judgment writ of attachment once a lawsuit is filed and summons can be issued.  Here, the Court should grant intervention and then issue a pre-judgment writ of attachment without notice.

NRS 31.017(7) allows this Court, or any Court of competent jurisdiction to issue a writ of attachment without notice and hearing when it is based on an action brought under NRS 112 for a fraudulent transfer.  Based on the allegations in the Complaint in Intervention, the exhibits attached to the Complaint in Intervention, and the Declaration of Robert Deken and Todd W. Prall affirming the facts alleged as true and correct under the penalty of perjury for the laws of the United States, Jaycees is entitled to a writ of attachment against the Manufactured Home to be issued without notice or hearing and served on Susan Browne, Charles McKinnon, and the Nevada Manufactured Housing Division.

////

////

////

////

////

////

////

////

**3.    Conclusion.**

For the foregoing reasons, Jaycees respectfully requests that this Court grant Jaycees the right to intervene in the adversary hearing and immediately issue a writ of attachment against the Manufactured home up to the value of the judgment against Debtor of $31,156.87.

Dated this 2nd day of May 2025.

HUTCHISON & STEFFEN, LLC


*/s/ Jeffrey R. Hall*
By: _____
John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145

*Attorneys for Las Vegas Jaycees*
*Senior Citizen Mobile Home Park*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the  5th  day of May, 2025, a copy of the

following document entitled:   *EMERGENCY MOTION TO (1) INTERVENE IN*

*ADVERSARY PROCEEDING AS A PLAINTIFF AND (2) FOR EX PARTE PRE-*

*JUDGMENT WRIT OF ATTACHMENT AGAINST MANUFACTURED HOME WITHOUT*

*NOTICE OR HEARING PURSUANT TO NRS 31.017 ON AN ORDER SHORTENING*

*TIME*  was served by Personally transmitting a copy of same via the Court's CM/ECF Internet

system to their respective registered email site.

Gregory L. Wilde
Wilde & Associates
7473 W. Lake Mead Blvd., Suite 100
Las Vegas, NV 89128
greg@wildelawyers.com


                                        */s/ Bobbie Benitez*
                                _____
                                An employee of Hutchison & Steffen, PLLC

**INTENTIONALLY LEFT BLANK**
**EXHIBIT PAGE ONLY**

# EXHIBIT A



John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086
email: jhall@hutchlegal.com

*Attorneys for Las Vegas Jaycees*
*Senior Citizen Mobile Home Park*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>URSULA LICHTENSTEIN,<br><br>               Debtor.<br>—————————————————<br><br>URSULA LICHTENSTEIN,<br><br>               Plaintiff,<br><br>v.<br><br>SUSAN BROWNE, an individual, and<br>CHARLES M. MCKINNON, JR. an<br>individual,<br><br>               Defendants.<br>—————————————————<br><br>. LAS VEGAS JAYCEES SENIOR<br>CITIZENS MOBILE HOME PARK,<br><br>               Plaintiff in Intervention, | Case No.: 25-10340-nmc<br>Chapter 13<br><br>Adversary Case No. 25-01110-nmc<br><br><br>**COMPLAINT IN<br>INTERVENTION** |

v.

URSULA LICHTENSTEIN, an individual;
SUSAN BROWNE, an individual, and
CHARLES M. MCKINNON, JR., individual,

Defendants in Intervention.

Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees"), through its counsel Hutchison & Steffen, PLLC, submits this complaint in intervention against Ursula Lichtenstein, Susan Browne, and Charles McKinnon, Jr. as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2.    This is a core proceeding pursuant to 28 U.S.C. § 157 157(b)(2)(H) and Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## STATEMENT OF REASON FOR COMPLAINT IN INTERVENTION

3.    The adversary proceeding already commenced by the Debtor concerns rights and title to a certain manufactured home, a 1994 Champion Infinity II, with the serial number 09946364387AB (the "Manufactured Home"), which is currently titled to Susane Browne and Charles Michael McKinnon, Jr.  Debtor alleges that the Manufactured Home should be part of the Debtor's estate and claims that it was inadvertently transferred to Susan Browne and/or Charles McKinnon, Jr.  Jaycees alleges that the transfer by which Browne and McKinnon was a fraudulent transfer whereby Debtor sought to defraud her creditors by intending to  avoid paying the pending judgment against her in violation of Nevada's Fraudulent Transfers statute located at

Chapter 112 of the Nevada Revised Statutes ("NRS Chapter 12") and/or in violation 11 U.S.C. § 548.

4.    While Debtor seeks to bring the Manufactured Home back into the Debtor's estate, Jaycees contends that that the Manufactured Home should either be brought back into the Debtor's estate to satisfy Debtor's debt or, even if it is not brought back into Debtor's estate, Jaycee's should be allowed to obtain a pre-judgment and/or post-judgment writ of attachment against the Manufactured Home to secure the debt owed Jaycees from the Debtor.

## PARTIES

5.    Plaintiff in Intervention Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees") is a non-profit subsidized manufactured home community who owns and operates a manufactured community in Clark County, Nevada (the "Community") operating under Chapter 118B of the Nevada Revised Statutes ("NRS 118B") and is one of the primary creditors of the Debtor, Ursula Lichtenstein (the "Debtor" or "Lichtenstein").  Debtor and Jaycees had stipulated to lift the stay to allow Jaycees judgment to be entered and liquidated as a creditor of the estate. That judgment is against the Debtor is for $31,156.87.

6.    The Debtor Ursula Lichtenstein ("Lichtenstein") was a resident of Jaycees and owned the Manufactured Home that was located as Space No. 305, a space that she leased from the mobile home community.  Debtor has a judgment for non-monetary eviction against her which has only been executed upon in part because the parties have been awaiting an order from this Court to confirm that such an execution will not violate the automatic stay.

7.    Susane Browne is the daughter of the Debtor and resides in Clark County, Nevada.

8.    Upon information and belief, Charles McKinnon, Jr. is a boyfriend to Susane Browne and resides in Clark County, Nevada.  Browne and McKinnon are the current title owners of the Manufactured Home.

## FACTUAL ALLEGATIONS

9.    The Debtor entered into a Mobile Home Lot Lease with Jaycees for Space No. 305 in the mobile home park operated by Jaycees (the "Park").  A true and correct copy of the Mobile Home Lot lease is incorporated into this Complaint in Intervention and attached as Exhibit 1.

10.    Jaycees commenced eviction proceedings against debtor in or about March 2024 based on Debtor's actions in the Park that violated her lease agreement, the Park's rules and Chapter 118B of the Nevada Revised Statutes that governs leases in spaces in mobile home parks and manufactured communities.  A true and correct copy of the Complaint filed in the Las Vegas Justice Court is incorporated into this Complaint in Intervention and attached as Exhibit 2.

11.    The Complaint alleged that the Debtor had committed acts that violated criminal statutes concerning the exploitation of an elderly person under Nevada Revised Statute 200.5092(3), which also constitutes a nuisance and is a basis for terminating a lease and seeking unlawful detainer under Nevada Revised Statute 118B.200(1)(f).

12.    On or about October 23, 2024, and then again on November 12, 2024, the Las Vegas Justice Court held a bench trial in the unlawful detainer matter.

13.    On December 17, 2024, the Justice Court issued a minute order finding that Debtor was a nuisance in the Park as defined in NRS 118B.190(1)(b) and NRS 118B.200(1)(f) and specifically found that Debtor had exploited an older person in the Park by obtaining control of their money, assets and property and converting that property assets or money.  A true and

correct copy of the Minute Order is incorporated into this Complaint in Intervention and attached as Exhibit 3.

14.     On January 2, 2025, the Justice Court entered formal Findings of Fact, Conclusions of Law, and Order in which the Court ordered that a permanent writ of restitution should issue but should be stayed for five judicial days from the date it was issued.

15.     The Findings of Fact, Conclusions of Law, and Order also ordered that Jaycees would have until December 31, 2024, to submit its Memorandum of Costs pursuant to NRS 69.040, and gave Debtor until January 7, 2025, to file any objection or motion to retax those costs.

16.     On December 31, 2024, Jaycees submitted its Memorandum of Costs, which pursuant to NRS 69.040, totaled $31,431.82, which included $28,290.00 in attorney fees pursuant to NRS 69.030.  Debtor did not file an objection or motion to retax the costs by January 7, 2025.

17.     On January 8, 2025, the Justice Court issued a Permanent Writ of Restitution ordering that the Premises be restored to Jaycees.

*18.*     On January 16, 2024, Jaycees submitted a proposed judgment, which was approved as to form by Debtor's litigation counsel.  Because the amount of reasonable attorney fees is left to the discretion of the justice court pursuant to NRS 69.040 and Nevada law, the proposed judgment left the amount of the attorney fees blank.

19.     On January 21, 2025, Debtor filed its petition for bankruptcy with this Court prior to the justice court determining the amount of the reasonable fee or entering a judgment.

20.     Thereafter, Jaycees and the Debtor submitted a stipulation to the bankruptcy court that lifted the automatic stay to allow the justice court to enter a judgment on the attorney fees and costs pursuant to NRS 69.040.

21.     Per this Court's order on the party's stipulation, a judgment for $31,156.87 was entered in the justice court.  A copy of that judgment is incorporated into this Complaint in Intervention and attached as Exhibit 4.

22.     As of today's date, the title of the Manufactured Home has been formally processed and transferred to Browne and McKinnon.  A true and correct copy of the current title is incorporated into this Complaint in Intervention and attached as Exhibit 5.

23.     Browne's agent has informed Jaycees that they have a buyer for the Manufactured Home.

24.     If the home is transferred and money exchanged, then Jaycees risks losing any right to collect against the Manufactured Home or recover from the asset that was fraudulently transferred from the Debtor.

## CLAIM FOR RELIEF

### (Fraudulent Transfer under NRS 112)

25.     Jaycees repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

26.     Debtor transferred the Manufactured Home to her daughter Browne within days of learning that the justice court was going to find against her at the trial.

27.     The Debtor's transfer was with the intent to delay or defraud Jaycees as a creditor in violation of NRS 112.80 and/or NRS 112.190.

28.     The transfer was made without receiving any equivalent value.

29.    The facts of the Debtor's transfer of the Manufactured Home shows actual intent to defraud creditors.  These facts include, but are not limited to the following:

a.    The Debtor knew that the transfer would result in the Debtor not being able to pay the debts she incurred as they come due.

b.    The transfer of the Manufactured Home included most of the value of the Debtor's assets.

c.    The Debtor has, through the bankruptcy, sought to retain possession and/or control of the Manufactured Home despite the eviction by asserting any eviction would violate the automatic stay.  Jaycees position has always been that the automatic stay would not stay an eviction since Jaycees obtained its writ of restitution prior to the Debtor filing her bankruptcy petition.

d.    The Debtor was made insolvent because of the transfer of the Manufactured home.

e.    The transfer of the Manufactured Home occurred shortly before Jaycees judgment was entered against Debtor and with knowledge that the Manufactured Home would subject to the judgment.

30.    Pursuant to NRS 112.110, Jaycees seeks the following relief:

a.    Avoidance of the transfer of the Manufactured home sufficient to satisfy Jaycee's claim.

b.    Issuance of a writ of attachment against the Manufactured home pursuant to NRS Chapter 31.

c.    an injunction against further disposition or transfer of the Manufactured Home.

Page 7 of 8

d.      Extension of the judgment to defendants Susan Brown and Charles McKinnon, Jr., to allow execution of the judgment against the Manufactured Home even if it is not a part of the bankruptcy estate.

31.     The transferred Manufactured Home is in danger of being transferred and or disposed of again entitling Jaycees to a pre-judgment writ of attachment under NRS Chapter 31.

32.     Jaycees has been required to incur attorney fees and are entitled to recover reasonable attorney fees to bring this action.

Dated this  ___ day of May 2025.

HUTCHISON & STEFFEN, LLC


*/s/ Jeffrey R. Hall*

By: _____

John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145

*Attorneys for Las Vegas Jaycees*
*Senior Citizen Mobile Home Park*

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 1



# Las Vegas Jaycees Senior Citizens Mobile Home Community

5805 W. Harmon Rd.
Las Vegas, NV 89103
(702) 364-4931

MOBILE HOME LOT LEASE

Lot Size: **Double WIDe**

Lease No: **305**

Address: _5805 W. Harmon Ave., Spc._

_Las Vegas NV 89103_

The Las Vegas Jaycees Senior Citizens Mobile Home Community, hereinafter "Jaycees", or its managing agent, hereinafter referred to as "Management", does hereby agree to lease to:

Hereinafter referred to as the "Resident", that certain Mobile Home Lot # **305** located at 5805 W. Harmon Ave., Las Vegas, Nevada 89103, bearing unit # **305**, under terms and conditions set forth below.

## 1. OTHER REQUIREMENTS

Attached hereto as "Exhibit A" and hereby incorporated herein is a copy of the "Rules, Regulations, and Policies" which provides a comprehensive and detailed description of the rules, regulations, and policies which Residents must follow. For those Residents who wish to keep a pet, attached hereto as "Exhibit B", and hereby incorporated herein is a copy of the "Pet Ownership Regulations and Application" which provides the rules specific to the keeping of a pet by Residents. Residents are required to comply with the "Rules, Regulations, and Policies" and if appropriate, to the "Pet Ownership Regulations and Application." Management reserves the right to change these documents, but will post notice of a time and place for Resident input and distribute copies of the new version to all residents after adoption of any change.

## 2. TERM OF LEASE

This lease shall be for a period of one calendar month.

## 3. RENEWAL OF LEASE

This lease shall be automatically renewed for successive terms of one (1) calendar month each, unless terminated by either party as herein provided.

## 4. LEASE AND OCCUPANCY REQUIREMENTS

Occupancy under this lease is limited to at least one member of the family unit being 55 years of age except as provided under the "Rules, Regulations, and Policies" document. Only the following persons may reside in the park in this family unit.

Ursula Lichtenstein     heAD of house

Master Lease 2018

1 of 6

PLTF000001

## 5. RENTAL PAYMENTS

A. The monthly rent of $ __240.00__ shall be due and payable on the first day of each month beginning _July 1_, __2018__. The monthly rent will remain in effect unless adjusted by Management, in which case Management shall give not less than ninety (90) days written notice. Any such adjustment in rent shall become effective on the first day of the calendar month following the expiration of the ninety (90) day notice period.

B. The initial payment for the period beginning _July 1_, __2018__, and ending _July 31_, __2018__, shall be $ _240.00_, due and payable at the time this lease is executed. Thereafter the Resident shall pay the monthly rent as provided in paragraph "A" of this section.

## 6. CHARGES OTHER THAN RENT

The Resident agrees to pay late charges on unpaid rent which will be assessed as follows:

A. Delinquent rent payment:

1. If rent is not paid by the fifth (5th) day of the month, a charge of one dollar ($1.00) per day will be assessed for each day the rent remains unpaid from the first (1st) day of the month, not to exceed thirty dollars ($30.00) per month.

2. Any payments received through the night slot will be assessed late charges as of the last working day or last open office day.

3. Residents who have not paid rent by the fifth (5th) day of the month will receive an appropriate "Notice to Pay rent or Quit." If no response is received by the end of the notice period, it will be necessary to file an action for possession of the premises in Justice of the Peace Court. Additional charges will be assessed to cover court and constable fees involved in the process. If it is necessary to issue "Final Notice" or to obtain formal eviction under state law, then the cost of such notice and/or eviction will also be assessed to the Resident.

B. Delinquency charges will not be assessed against account balances due for previous delinquencies other than rent.

C. Bad Check Charges: A charge of five dollars ($5.00) will be made for a check in payment of rent and/or other charge which is returned due to insufficient funds or related reasons. If such occurs, Management will no longer accept checks from that Resident, but will take cash or money orders only.

D. Charges for Cable Service: A charge of $ N/A will be assessed for Cable TV service.

## 7. SECURITY DEPOSIT

No security deposit shall be required for occupancy in this park.

## 8. UTILITIES

The Management agrees to furnish utilities to the Resident on the following terms and conditions:

PLTF000002

A. Sewer, water, and refuse service shall be furnished without additional charge, unless the Sanitation District shall change the billing system so that sewer bills are combined bills issued by the Las Vegas Valley Water District, in which case, the resident shall pay the combined bill.

B. Natural gas and electricity services used by the Resident shall be billed directly by the supplier and the Resident shall make payment directly to the supplier.

## 9. SERVICES TO BE RENDERED BY AND AGREEMENTS OF THE MANAGEMENT
Management agrees:

A. To keep the common areas in a neat, clean, and sanitary condition.

B. To maintain plantings and yards in common areas.

C. To maintain, repair, and supply all utilities to the community and laundry buildings.

D. To maintain and repair streets and parking areas.

E. To provide and pay for refuse removal.

## 10. AGREEMENT OF RESIDENT
As a condition of occupancy of the leased mobile home space, the Resident agrees:

A. To keep the lot area and the mobile home in a clean and sanitary condition, and to cooperate with Management in maintaining common areas.

B. To use the mobile home solely as a private dwelling for him/herself and eligible members of his/her family, and not to lease, rent, or permit occupancy of any portions of the mobile home by any person not listed on the application.

C. To dispose of all refuse, garbage, and trash by placing it in containers to be furnished by Management, such materials to be collected by the refuse company.

D. That he/she and other members of his/her family will not engage in unlawful or disorderly conduct or the commission of a nuisance, or in conduct that is a hazard to the health or safety, or disturb other Residents in quiet enjoyment of their dwellings and project facilities.

E. To abide by all adopted rules, regulations, notices, and speed limits which are hereby incorporated herein reference.

## 11. TERMINATION OF LEASE BY RESIDENT
The Resident may terminate this lease at any time by giving a forty-five (45) day written notice. This written notice shall be delivered to the office of the Management.

## 12. TERMINATION OF LEASE BY MANAGEMENT
Management may terminate this lease for one or more of the following reasons:

A. Failure to pay the agreed upon rental when due.

PLTF000003

B. Failure of the Resident to comply with any law, ordinance, or governmental regulation applicable to siting or occupancy of a mobile home.

C. Failure of the Resident to comply with the terms of this lease or the rules and regulations governing the park.

D. Conduct of the Resident in the mobile home park which constitutes a serious annoyance to other Residents or seriously interferes with the management of the park.

E. Condemnation or a change in land use of the mobile home park.

F. Conduct of the Resident which constitutes a nuisance under applicable laws of the State of Nevada or the County of Clark.

Management may terminate this lease upon giving written notice to the Resident in the manner provided in NRS 40.280:

A. Five (5) days in advance if the termination is based on the conduct of the Resident constituting a nuisance as described in subsection 6 of NRS 118B.200

B. Ten (10) days in advance if the termination is due to failure of the tenant to pay rent, utility charges or reasonable service fees.

C. One hundred eighty (180) days in advance if the termination is due to a change in the use of the land by the landlord pursuant to NRS 118B.180.

D. Forty-five (45) days in advance if the termination is for any other reason.

## 13. ASSIGNMENT
The Resident may not assign this lease.

## 14. SUBLETTING OR RENTING
The resident shall not sublet or rent his/her mobile home or any part thereof except as may be approved by Management as specified in the "Rules, Regulations, and Policies."

## 15. HEARING PROCEDURES
In connection with all termination of lease notices and proceedings, a duly authorized representative of Management will inform the Resident in a private conference, or other appropriate manner, of the reasons for the termination and will give the Resident an opportunity to review and participate, if he/she so wishes, in the hearing procedure that has been established by Management which is as follows: If an informal hearing has been requested by a Resident, the informal hearing must be conducted by a Management employee or a person mutually agreed to by both parties. If the informal hearing does not resolve the issue to mutual satisfaction, then:

A. The Resident may retain counsel or other representative, if desired, at it own expense.

B. Either the Resident or his/her counsel/representative must be given an opportunity to examine evidence and question any adverse witness(es). The Resident or his/her counsel/representative must also be given an opportunity to present testimony and evidence in its favor. The decision of the hearing official must be in writing, must be based solely on evidence provided at the hearing, and must state the legal and evidentiary grounds for the decision.

PLTF000004

Decision by the hearing officer in favor of Management, or which denies the relief requested by the resident in whole or in part shall not constitute a waiver of, or affect in any manner whatever, any rights the resident may have to a trial de novo or judicial review in any judicial proceedings which may thereafter be brought in the matter.

## 16. OWNERSHIP OF MOBILE HOMES

A. The Resident must be a sole owner or co-owner of the mobile home except that a Resident may be a renter in a mobile home owned by the Las Vegas Jaycees Senior Citizens Mobile Home Community.

B. In the case where the Resident desires to sell his/her mobile home to a buyer who will keep the mobile home in the mobile home park, the sale and the prospective buyer must be approved in writing by Management. Management reserves the right to accept or reject any proposed buyer that seeks to become a Resident to ensure that the proposed buyer meets age and income eligibility requirements. The prospective buyer must be approved for tenancy in the mobile home park before the sale is closed.

C. If the Resident sells or otherwise disposes of his/her mobile home to a buyer or occupant who is not eligible for tenancy in the mobile home park or is not accepted as a Resident by Management, the selling or disposing Resident or his/her legal representatives must notify management of the date of the sale or disposition and the name of the buyer or recipient, and the mobile home must be removed from the park within forty-five (45) days after the close of the sale or disposal. Space rental must be paid to Management for the full time the mobile home occupies space in the mobile home park.

D. If the Resident is not the sole owner of the mobile home in which he/she resides, and the Resident leaves the park, Management may require the mobile home to be removed from the park within forty-five (45) days after the Resident leaves. Space rental must be paid to the Management for the full time that the mobile home occupies space in the park. Removal of the mobile home may be waived at the sole option of Management if the mobile home is sold for occupancy by a qualified prospective Resident who is acceptable to Management. Management reserves the right to accept or reject any proposed buyer who seeks to become a Resident.

PLTF000005

I/WE, THE RESIDENT(S) WHOSE SIGNATURE(S) APPEAR IMMEDIATELY BELOW, HAVE READ AND DO UNDERSTAND AND HEREBY AGREE TO THE PROVISIONS OF THIS LEASE AND THE CONDITIONS SET FORTH IN THIS LEASE, AND, I/WE HEREBY FURTHER AGREE THAT THE FAILURE TO OBSERVE AND FOLLOW SAID LEASE PROVISIONS AND CONDITIONS OF OCCUPANCY WILL BE JUST AND PROPER CAUSE FOR THE TERMINATION AND CANELLATTION OF THIS LEASE BY MANAGEMENT. I/WE ALSO UNDERSTAND THAT THIS LEASE CONTAINS A PROVISION FOR THE AUTOMATIC RENEWAL FOR SUCCESSIVE TERMS OF ONE (1) CALENDAR MONTH EACH, UNLESS TERMINATED BY EITHER PARTY AS HEREIN PROVIDED.

IN WITNESS WHEREOF, THE PARTY(IES) HEREIN HAVE EXECUTED THIS LEASE AGREEMENT THIS 27th DAY OF June , 2018 .

MANAGEMENT

By: _____
(Representative)

_____
(Title)

RESIDENT

By: _____
(Head of Household)

_____
(Other Occupant)

PLTF000006

**Las Vegas Jaycees Senior Citizens Mobile Home Community**
**5805 Harmon Avenue**
**Las Vegas, Nevada 89103**
**(702) 364-4931**

## MOBILE HOME LOT RENT/STORAGE AGREEMENT LEASE ADDENDUM

A.  If the current resident passes away and there are no living Person(s) residing in the mobile home subject to the lease agreement, then the heir/responsible party shall be allowed three (3) months space rent at the then current space rent amount, chargeable to the deceased tenant, beginning the following month after the death. This continuing discounted three (3) month rent concession is to enable the heir/responsible party time to get decedent affairs in order and try to sell the home.  Should the home not sell during the allotted three (3) month period, the home will be placed on an elevated rent **Storage Agreement** for two (2) times the current space rent plus **One Hundred Dollars ($100.00)** and is due and payable on the first day of the month.  If the payment is received the closing of business on the fifth day of the month, a **Twenty-Five ($25.00)** late charge will be imposed.

B.  Should a resident chose to move out of the community and/or be evicted from the community, the person on the lease or the responsible party is then advised the elevated storage rent rate goes into effect immediately.  This being at the rate of two (2) times the current space rent plus **One Hundred Dollars ($100.00)** which is due on the first of the month, with late charges of **Twenty-Five ($25.00)** incurring following the close of business the fifth day of the month.  Failure to comply with the elevated rent Storage Agreement will result in the mobile home being subject to a Landlord Lien with all rent, late, and legal fees to be paid in full in order to reinstate the Storage Rent Agreement and have the Landlord Lien removed.

Date _6/27/18_

_Nancy Werner_
Manager _& Claire Asst_

Date _6-27-18_

_Ursula Lichtenstein_
(Resident Signature)

_Ursula Lichtenstein_
(Print Name)

_____
(Resident Signature)

_____
(Print Name)

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 2



Las Vegas Justice Court
Electronically Filed
3/27/2024 9:00 AM
Jessica Gurley
CLERK OF THE COURT

Becky A. Pintar, Esq.
Nevada State Bar #7867
**PINTAR ALBISTON LLP**
5510 S. Fort Apache Road, #215
Las Vegas, Nevada 89148
P: (702) 685-5255
Becky@PintarAlbiston.com
*Attorneys for Plaintiff*

## JUSTICE COURT, LAS VEGAS TOWNSHIP

## CLARK COUNTY, NEVADA

24C008342

| | |
|---|---|
| Las Vegas Jaycees Senior Citizens Mobile Home Park | CASE NO.: DEPT NO. Department #: LVJC 6 |
| Plaintiff, v. | **COMPLAINT FOR** |
| Ursula Lichenstein, and all other tenants in possession, | **UNLAWFUL DETAINER** |
| Defendants. | **(Violation of NRS 200.5092)** |

COMES NOW, Plaintiff, Las Vegas Jaycees Senior Citizens Mobile Home Park, and states as follows:

1.  Plaintiff is a non-profit business authorized to operate in the state of Nevada for low-income senior citizens and is the owner of real property located at 5805 W. Harmon Ave., as situated within Las Vegas Township, Clark County, Nevada (the "Property").

2.  The Defendant is the owner of a mobile home that is occupying space no. 305 of the Property pursuant to a rental agreement (the "Premises").

3.  In accordance with NRS 118B.190(1)(b) and NRS 118B.200 (1)(f), Defendant was provided NOTICE that she was in violation of NRS 200.5092(3) by exploiting an older and/or vulnerable person(s):

> Exploitation" means any act taken by a person who has the trust and confidence of an older person or a vulnerable person or any use of the power of attorney or guardianship of an older person or a vulnerable person to:
> (a) Obtain control, through deception, intimidation or undue influence, over the older person's or vulnerable person's money, assets or property with the

1

**PINTAR ALBISTON LLP** *(vertical text, left margin)*

intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of his or her money, assets or property; or

(b)  Convert money, assets or property of the older person or vulnerable person with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of his or her money, assets or property.

4.  Plaintiff alleges that Defendant has sought control over finances as follows:

- 8/17/23 Ms. Lichtenstein has a POA for resident Carolyn Wood who lives in space #268.  She is 92 and has no known relatives.
- 10/18/23 Ms. Lichtenstein has a POA for resident Robert Cartegena who lives in space #69.  He is 91 and has no known relatives.
- 2/22/24 Ms. Lichtenstein added her name to the title of Mr. Cartagena.
- 3/8/24 Ms. Lichtenstein took Mr. Cartagena's name off the title to his own home.

5.  On March 20, 2024, Plaintiff served THREE (3) DAY NOTICE TO COMPLY WITH NRS 118B OR SURRENDER PREMISES. **See Notice and Affidavit of Service, attached hereto as Exhibit 1.**

6.  Defendant remains a threat to the financial well-being of other vulnerable senior residents of the park.

7.  Defendant(s) are guilty of unlawful detainer of the Premises.

8.  The Plaintiff has been required to obtain the services of an attorney and entitled to recover reasonable attorney fees and costs.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

PINTAR ALBISTON LLP

2

BY THIS COMPLAINT, Plaintiff requests:

1. For restitution and possession of the rental premises by permanent writ of restitution;

2. Declaring the rental agreement to be terminated;

3.  For attorney fees and costs; and

4. For other relief as the Court deems appropriate.

DATED:  March 27, 2024          PINTAR ALBISTON LLP

By: */s/ Becky A. Pintar*

_____

Becky A. Pintar, Esq.
*Attorneys for Plaintiff*



**UNITED STATES POSTAL SERVICE**

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing.
This form may be used for domestic and international mail.

MAR 2 0 2024

**Certificate Of Mailing**

BECKY A PINTAR, ESQ
6069 S. FT. APACHE RD. #100
LAS VEGAS, NV 89148

To: Ursula Lichenstein
+ all tenants in Possession
5805 w Harmon Ave # 305
Las Vegas Nv 89103

PS Form **3817**, April 2007 PSN 7530-02-000-9065

EP 285 1:38

U. S. POSTAGE PAID
LAS VEGAS, NV
89103
MAR 20, 24
AMOUNT
**$2.00**
R2304W121372-12

# THREE (3) DAY NOTICE OF
# TERMINATION OF RENTAL AGREEMENT
## Las Vegas Jaycees Senior Citizens MHC

TO:    URSULA LICHENSTEIN
And all Tenants in Possession
5805 W Harmon Ave, Space 305
Las Vegas, NV 89103

**YOU ARE HEREBY NOTIFIED:** to permanently remove your manufactured home and yourself from the Park and verify your intent to move with the Park Manager, or your Rental Agreement will be terminated in Three (3) Days.

This Three (3) Day Notice to Vacate and lease termination is mandated because of a reasonable cause to believe" if, in light of all the surrounding facts and circumstances which are known" that you have violated NRS 200.5093 by exploiting an older or vulnerable person which means:

"any act taken by a person who has the trust and confidence of an older person or a vulnerable person or any use of the power of attorney or guardianship of an older person or a vulnerable person to:

(a) Obtain control, through deception, intimidation or undue influence, over the older person's or vulnerable person's money, assets or property with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of his or her money, assets or property; or

(b) Convert money, assets or property of the older person or vulnerable person with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of his or her money, assets or property.:

Based upon the foregoing, your conduct in remaining within the premises amounts to a nuisance, as defined by NRS 118B. 200 as a violation of state law. The Park can commence legal proceedings to terminate your tenancy within three (3) days, if you fail to comply with this Notice by removing yourself and your mobile/manufactured home from the Park.  You will be responsible for all court costs and fees if your tenancy is terminated, which can be recovered by a lien on your manufactured home.

**DATE:** March 20, 2024

*/s/ Becky A. Pintar*

_____
Becky A. Pintar, Esq.
Pintar Albiston LLP
5510 S. Fort Apache Road
Las Vegas, NV 89148
Becky@PintarAlbiston.com
Attorney for Las Vegas Jaycees Senior Citizens MHC

## PROOF OF SERVICE

On _____ 3|20| _____ , 2024 I served the above THREE (3) DAY NOTICE
Of TERMINATION OF RENTAL AGREEMENT

at the following time _3_ : _48_ AM / PM and in the following manner:

_____ By delivering a copy to the tenant(s) personally, in the presence
of a witness.

_____ Because the tenant(s) were absent from their place of residence or
from their   usual   place   of   business,   by   leaving   a
copy   with

_____ , a person of suitable age and
discretion, at either place and mailing a copy to the tenant(s) at
their place of residence or place of business.

__X__ Because the place of residence or business could not be
ascertained, or a person of suitable age or discretion could not be
found there, by posting a copy in a conspicuous place on the
property, delivering a copy to a person there residing, if the person
could be found, and mailing a copy to the tenant(s) at the place
where the property is situated.   See attached copy of the
Certificate of Mailing.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAW OF THE STATE
OF NEVADA THAT THE NOTICE WAS PROVIDED ON THE DATE AND IN THE
MANNER LISTED ABOVE.

| _____ | _____ | _____ |
| Signature of Server | Signature of Tenant | Signature of Witness |

_Greg Brown_
| _____ | _____ | _____ |
| Print Server's Name | Print Tenant's Name | Print Witness's Name |

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 3



## JUSTICE COURT OF LAS VEGAS TOWNSHIP

## COUNTY OF CLARK, STATE OF NEVADA

Civil Unlawful Detainer Trial

### MINUTE ORDER

| | |
|---|---|
| 24C008342 | Las Vegas Jaycees Senior Citizens Mobile Home Park, Plaintiff(s) |
| Civil - Unlawful Detainer | vs. |
| | Ursula Lichenstein, Defendant(s) |

| | | | |
|---|---|---|---|
| HEARD BY: | Goodey, Jessica | COURTROOM: | CHAMBERS |
| CLERK: | Yasmin Perez | REPORTER:<br>RECORDER: | |

| PARTIES: | Las Vegas Jaycees Senior Citizens Mobile Home Park, Plaintiff, not present | Todd Prall, Attorney, not present |
|---|---|---|
| | Ursula Lichenstein, Defendant, not present | Gregory Wilde, Attorney, not present |

### JOURNAL ENTRIES

This matter came on for hearing on October 23, 2024 and was continued for additional evidence on November 12, 2024.  The Court, having reviewed the evidence and being fully advised, finds as follows: The Court finds that the notice substantially complies with NRS 118B.190, and any alleged deficiencies were cured by the filing of the Complaint, which contained the requisite specificity.  In so holding, the Court finds that Defendant had more than sufficient notice of the allegations against her, as the Complaint was filed in March 2024 and the trial was not held until October 2024, much longer than the three (3) days notice provided for in NRS 118B.190.  The Court further finds Plaintiff established by a preponderance of the evidence that Defendant is a "nuisance" pursuant to NRS 118B.190(1)(b) and NRS 118B.200(1)(f).  The Court further finds that Plaintiff established by a preponderance of the evidence that Defendant exploited an older and vulnerable person, specifically Robert Cartagena, by obtaining control of Mr. Cartagena's property, assets and money through deception and/or undue influence, and converting Mr. Cartagena's money, assets and property.  The Court notes that Defendant had a power of attorney over Mr. Cartagena for a period of time.  However, paragraph 7 of the Power of Attorney states that Defendant was prohibited from using Mr. Cartagena's property to benefit herself.  The Court finds that Defendant misused her Power of Attorney when she added her name to the title of Mr. Cartagena's mobile home and then removed Mr. Cartagena's name from the title.  While Defendant eventually turned over some of the proceeds from the sale of the mobile home, the Court finds that she intended to benefit and did benefit from the sale by keeping some of the proceeds for herself.  To the extent Defendant contends that the amounts she kept were reimbursement for items she had purchased on Mr. Cartagena's behalf, the Court finds Defendant's testimony to lack credibility and is directly contradicted by other evidence.  The Court further finds Defendant misused the Power of Attorney by signing the final sale paperwork in May 2024, after she had been advised the Power of Attorney had been revoked.   Accordingly, the Court finds that Plaintiff established all elements of an unlawful detainer action and that Plaintiff is entitled to a Permanent Writ of Restitution of the premises.  The Writ of Restitution is stayed for 5 judicial days following written entry of the order.

Counsel for Plaintiff is ordered to prepare Findings of Fact and Conclusions of Law, to be submitted to counsel for Defendant for approval as to form and content, consistent with the findings above.  The Court notes that the findings above are not a fully recitation of the facts and the findings of fact may include additional facts established at trial by competent evidence.

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 4



Las Vegas Justice Court
Electronically Filed
2/27/2025 1:06 PM
Melisa De La Garza
CLERK OF THE COURT

1   John T. Steffen (4390)
2   Todd W. Prall (9154)
    HUTCHISON & STEFFEN, PLLC
3   10080 West Alta Drive, Suite 200
    Las Vegas, NV 89145
4   Tel:    (702) 385-2500
    Fax:    (702) 385-2086
5   jsteffen@hutchlegal.com
    tprall@hutchlegal.com
6

7   *Attorneys for Plaintiff*

    **JUSTICE COURT OF LAS VEGAS TOWNSHIP**
8   **CLARK COUNTY, NEVADA**

9   | Las Vegas Jaycees Senior Citizens Mobile | Case No. 24C008342 |
10  | Home Park, | Dept No. 6 |
11  |            | JUDGMENT |
12  |    Plaintiff, | |
    | v. | |
13  | Ursula Lichenstein, and all other tenants in | |
14  | possession, | |
15  |    Defendant | |

16          This matter came on for trial before the Court on October 23, 2024, and November 12, 2024.

17  Plaintiff appeared by and through its counsel, Todd W. Prall of Hutchison & Steffen, PLLC.

18  Defendant appeared by and through counsel Gregory L. Wilde of Wilde & Associates, LLC.  On

19  December 17, 2024, the Court issued a Minute Order finding in favor of Plaintiff on its unlawful

20  detainer claim and ordered the parties to prepare proposed findings of fact and conclusions of law.

21          On January 2, 2024, the Findings of Fact and Conclusions of Law were entered ("FFCL").

22  As part of the FFCL, the Court ordered that a permanent writ of possession would issue ordered that

23  any Memorandum of Costs be submitted by December 31, 2024, and that any objection or motion to

24  retax the Memorandum of Costs be submitted by January 7, 2024.  The Court received a

25
26
27
28                                      1                                      {01021289}

Memorandum of Costs filed on December 2024 and, having received no objection or motion to retax can enter judgment pursuant to the terms of the FFCL as follows:

1. A permanent writ of possession has already been issued on January 8, 2025 pursuant to the FFCL, and this judgment further confirms that the premises known as Space 305, 5805 West Harmon Avenue, Las Vegas, Clark County, Nevada, presently occupied by defendant, shall immediately be restored to plaintiff.

2. Plaintiff shall recover of defendant plaintiff's attorney fees and costs including a sum of ___$28,290.00___ in attorneys' fees and a sum of $3,141.82 in costs, for a total sum of
$2,866.87
___$31.156.87___, which shall constitute a lien upon the mobile home, and the contents contained therein, pursuant to, and to the extent allowed under, NRS 108 et. seq. and/or NRS 21.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

2

{01021289}

Case No. 24C008342
*Las Vegas Jaycees v Lichtenstein*

3.       The Court has reviewed the Memorandum of Costs filed in this matter which includes a record of the attorney fees Plaintiff has incurred in this matter.  Based on this review, the Court's knowledge of counsel and the work performed in this Court, and consideration of the factors set forth in *Brunzell v. Golden Gate national Bank*, 85 Nev. 345, 455 P.2d 31 (1969), the Court finds that the fees requested are reasonable; and necessarily incurred.

DATED this _____ day of _____2/27/2025_____, 2025.

Electronically signed by
*Gwen Horley*
Justice of the Peace
Department 6, Las Vegas Justice Court

Respectfully submitted by:

HUTCHISON & STEFFEN, PLLC

___*/s/ Todd W. Prall*_____
John T. Steffen (4390)
Todd W. Prall (9154)
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145

*Attorneys for Plaintiff*

Approved as to form and content:

WILDE & ASSOCIATES, LLC

___Did not Sign_____
Gregory Wilde (4417)
7473 W. Lake Mead Blvd., #100
Las Vegas, NV 89128

*Attorney for Defendant*

3

{01021289}

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT 5



Keep this document in a safe place. A certificate of ownership document maybe required to sale, transfer, convert a structure to real property, or obtain financing.

Note: This document is sent without the County Assessor's Endorsement. You will need to get their endorsement below when you are ready to transfer title

STATE OF NEVADA
HOUSING DIVISION

**B0381775**

ISSUED

# Certificate of Ownership

**OWNERS:**
SUSAN BROWNE AND CHARLES MICHAEL MCKINNON JR
5805 W HARMON AVE #305
LAS VEGAS, NV 89103

**TOD:**

**LIENHOLDER:**

Serial No: 09946364387AB
Year: 1994
Make/Model: CHAMPION INFINITY II
Size: 624" x 142"        612" x 142"

WARNING:
There may be outstanding liens against this structure which do not appear on the face of this certificate. Interested person(s) should contact Manufactured Housing.

ISSUE DATE: 03/11/2025

THIS CERTIFICATE IS EVIDENCE OF LEGAL OWNERSHIP OF THE STRUCTURE IT DESCRIBES.
THIS CERTIFICATE OF TITLE REMAINS IN FORCE AND EFFECT UNTIL ITS CANCELLATION.

WARNING:
ENDORSEMENT REQUIRED BY COUNTY ASSESSOR WHERE MOBILE HOME IS SITUATED THAT ALL TAXES HAVE BEEN PAID BEFORE TITLE CAN BE TRANSFERRED.

_____
SIGNATURE ASSESSOR OR DEPUTY ASSESSOR

---

**TO TRANSFER OR CHANGE TITLE RECORD, YOU WILL COMPLETE THIS FORM.** Additional forms and/or supporting documents may be required along with this document. There is a $60 fee, per titling transfer or record change. You will mail this form to our Carson City office for processing or drop it at one of the locations listed on the back of the form. *Complete documents must be submitted to the division with proper payment within 45 days of the transfer.*

**1.** Contact Information - Please provide the phone number and e-mail address of the party we should contact, if there are any issues with this titling.

Name: _____

Phone: _____    E-Mail Address: _____

Physical Address of Structure: _____

What type(s) of transactions are you wishing to accomplish with this submission?

☐ Home Sold/New Buyer
☐ Remove Lienhold
(May add TL-102 or letter of No Interest)
☐ Remove Deceased Owner
(May require court order, death certificate or TL-106, if applicable)
☐ Repossesion of home
(Lienholder will add TL-101)

☐ Change Owner Names
☐ Add Lienholder
☐ Gift Home
(Parks will add TL-101)
☐ Other _____

*If you have titling questions, you may email us at titles@housing.nv.gov or call us at (888) 486-8775. You can visit HOUSING.NV.GOV to view and download titling forms.*

**2.** Release of Lien Holder - *If a lienholder is listed above, they must release their interest by attaching a TL-102 Lien Satisfied Form. This form can be found on our website at HOUSING.NV.GOV on the Titling page under Title Forms. We will also accept a Letter of No Interest (on Letterhead & Notarized.)*

**3.** Trust Appointment and Powers - *If the home is in a trust or will be placed into a trust, the Trustees or Successor Trustees must complete this section.*

| For Trustee(s) to Complete | For Successor Trustee(s) to Complete |
|---|---|
| I/We_____ | I/We_____ |

Declare that I/We have been appointed as Trustee(s) of:

Declare that I/We have been appointed as Successor Trustee(s) of:

And have the powers granted as trustee(s) to sign for the transfer of the above described structure. I/We the trustee(s) jointly and severally indemnify the Nevada Housing Division, and hold the Nevada Housing Division and the State of Nevada harmless from any liability on the account of the issuance of a title on said structure as aforesaid.

And have the powers granted as successor trustee(s) to sign for the transfer of the above described structure. I/We the trustee(s) jointly and severally indemnify The Nevada Housing Division, and hold the Nevada Housing Division and the State of Nevada harmless from any liability on the account of the issuance of a title on said structure as aforesaid.

**4.** Bill of Sale - *Place the date the sale occurred and the dollar amount paid for the home. If gifting a home, you may place zero dollars.*

(I/We) as sellers further state that to (my, our) knowledge, the structure is free and clear of any liens encumbrances, lawful claims and demands to any person whatsoever, the structure is not involved in any existing or pending litigation. That in consideration of $ _____ and other valuable consideration, the receipt of whereof is hereby acknowledged, the undersigned (SELLER) does hereby, sell, transfer and deliver on the _____ day of _____ , 20_____ his/her right, title and interest in the above structure to the following purchaser.

**5.** New Title Owners - *Place the names of owner(s) as you wish them to appear on the title below. Please print legibly, all names to be shown on the title. Vesting is for situations where there are multiple owners only. If vesting is not selected, we will place an "OR."*

Print New Owners Name(s): _____

_____

_____

Vesting between Names: ☐ OR   ☐ AND   ☐ JTWROS   (If appliable)

E-Mail Address: _____    (Your title will be e-mailed to you)

Mailing Address: _____

(Street)                                        (City)                                        (Zip)

**6.** Beneficiary/Transfer On Death. - *If you wish to appoint or change a beneficiary to this structure, please complete below. For more details, see NRS 489.564*

Select Action Required:   ☐ ADD      ☐ Remove

Print New Owners Name(s): _____

**7.** New Lienholder - *Place the name(s) of lienholders here.*

Print  Lienholder Name(s): _____

E-mail Address: _____

Mailing Address: _____

(Street)                                        (City)                                        (Zip)

**8.** The statements and declarations herein contained are for the specific purpose of inducing said Division to issue a Certificate of Ownership; that (I, we) shall and will assume, fully pay, satisfy and discharge any and all liens, claims or encumbrances disclosed herein or any others that may be shown or proved to be upon or against said structure and indemnify and hold harmless said Division and the State of Nevada on account of the issuance of said Certificate of Ownership on said structure as aforesaid.

**9.** Signatures and Notary of Seller(s) -
*Sign in front of Notary.*

_____        _____
SIGNATURE                          DATE

_____        _____
SIGNATURE                          DATE

_____        _____
SIGNATURE                          DATE

_____        _____
SIGNATURE                          DATE

This Instrument was acknowledged before me on this
_____day of_____, 20_____
By_____and_____

STATE OF_____
COUNTY OF_____

_____
Notary Public

Above signatures of the OWNERS as described on the face of this
Certificate releases the OWNER's interest in the described structure.

**10.** Signatures and Notary of New Titled Owner(s)
*Sign in front of Notary.*

_____        _____
SIGNATURE                          DATE

_____        _____
SIGNATURE                          DATE

_____        _____
SIGNATURE                          DATE

_____        _____
SIGNATURE                          DATE

This Instrument was acknowledged before me on this
_____day of_____, 20_____
By_____and_____

STATE OF_____
COUNTY OF_____

_____
Notary Public

Above signatures of the OWNERS as described on the face of this
Certificate releases the OWNER's interest in the described structure.

**Carson City Office**

**1830 E College Parkway Ste 120**
Carson City, Nevada 89706
Phone: (775)684-2940



NEVADA
HOUSING DIVISION

**Las Vegas Office**

**3300 W Sahara Ave Ste 320**
Las Vegas, Nevada 89103
Phone: (702) 486-4135

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT B



John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086
email: jhall@hutchlegal.com

*Attorneys for Las Vegas Jaycees*
*Senior Citizen Mobile Home Park*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>URSULA LICHTENSTEIN,<br><br>                        Debtor.<br>_____<br><br>URSULA LICHTENSTEIN,<br><br>                        Plaintiff,<br><br>v.<br><br>SUSAN BROWNE, an individual, and<br>CHARLES M. MCKINNON, JR. an<br>individual,<br><br>                        Defendants. | Case No.: 25-10340-nmc<br>Chapter 13<br><br>**DECLARATION OF TODD W. PRALL<br>IN SUPPORT OF**<br><br>**EMERGENCY MOTION**<br><br>    **1. TO INTERVENE IN<br>        ADVERSARY PROCEEDING AS<br>        A PLAINTIFF**<br><br>    **2. FOR EX PARTE PRE-<br>        JUDGMENT WRIT OF<br>        ATTACHMENT AGAINST<br>        MANUFACTURED HOME<br>        WITHOUT NOTICE OR<br>        HEARING PURSUANT TO NRS<br>        31.017**<br><br>**ON AN ORDER SHORTENING TIME** |

Todd W. Prall declares under the penalty of perjury for the laws of the United States that

the following is true and correct:

1.    I am the attorney of record who handled the underlying unlawful detainer action on behalf of the Plaintiff Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees") in Las Vegas Justice Court entitled *Las Vegas Jaycees Senior Citizen Mobile Home Park v. Lichtenstein*, Case No. 24C008342 (the "Unlawful Detainer Action") and I have personal knowledge of the facts set forth herein.

2.    I make this declaration in support of the Emergency Motion (1) to Intervene in the Adversary Proceeding as a Plaintiff; and (2) for an Pre-Judgment Writ of Attachment against Manufactured Home an Order Shortening Time (the "Motion").

3.    I have prepared the proposed Complaint in Intervention which is attached to the Motion as Exhibit A and all the exhibits included with the Complaint in Intervention, and, to the extent I have personal knowledge of the facts set forth therein, I declare them to be true.

4.    The Manufactured Home that is the subject of the adversary proceeding is also the subject of a fraudulent transfer and is in danger of being sold and/or disposed of.

5.    Based on the information Jaycees currently has, there are no other assets against which Jaycees might recover the judgment entered against the Debtor.

6.    The Motion should be heard as soon as possible in order to ensure that Jaycees rights are protected.

7.    I declare the foregoing under the penalty of perjury for the laws of the United States.

Dated: May 2, 2025            /s/ Todd W. Prall

                                               Todd W. Prall

Page 2

INTENTIONALLY LEFT BLANK
EXHIBIT PAGE ONLY

# EXHIBIT C



John T. Steffen (4390)
Jeffrey R. Hall (9572)
Todd W. Prall (9154)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Plaza
10080 Alta Drive No. 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086
email: jhall@hutchlegal.com

*Attorneys for Las Vegas Jaycees*
*Senior Citizen Mobile Home Park*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>URSULA LICHTENSTEIN,<br><br>               Debtor.<br>_____<br><br>URSULA LICHTENSTEIN,<br><br>               Plaintiff,<br><br>v.<br><br>SUSAN BROWNE, an individual, and CHARLES M. MCKINNON, JR. an individual,<br><br>               Defendants | Case No.: 25-10340-nmc<br>Chapter 13<br><br>Adversary Case No. 25- 01110 -nmc<br><br>**DECLARATION OF ROBERT DEKEN IN SUPPORT OF EMERGENCY MOTION TO**<br><br>  **1.  INTERVENE IN ADVERSARY PROCEEDING AS A PLAINTIFF**<br><br>  **2.  FOR EX PARTE PRE-JUDGMENT WRIT OF ATTACHMENT AGAINST MANUFACTURED HOME WITHOUT NOTICE OR HEARING PURSUANT TO NRS 31.017**<br><br>**ON AN ORDER SHORTENING TIME** |

Robert Deken declares under the penalty of perjury for the laws of the United States that the following is true and correct:

    1.     I am the manager of Las Vegas Jaycees Senior Citizen Mobile Home Park ("Jaycees") and I have personal knowledge of the facts set forth herein.

2.      I make this declaration in support of the Jaycees Emergency Motion to Intervene in Adversary Proceeding as a Plaintiff and For Ex Parte Pre-Judgment Writ of Attachment against Manufactured Home without Notice or Hearing Pursuant to NRS 31.017 on an Order Shortening Time.

3.      Jaycees is a non-profit subsidized manufactured home community for senior citizens that operates under Chapter 118B of the Nevada Revised Statutes ("NRS 118B").

4.      The Debtor Ursula Lichtenstein ("Lichtenstein") was a resident of Jaycees and owned a manufactured home that was located as Space No. 305 (the "Manufactured Home") in the mobile home park (the "Park").  Lichtenstein signed Mobile Home Lot Lease to live in the Park.

5.      I have reviewed the proposed Complaint in Intervention attached to the Motion as Exhibit A.  I have personal knowledge of the facts upon which the claims for fraudulent transfer are based and assert that they are true and correct.

6.      As set forth in the Complaint in Intervention for a fraudulent transfer under NRS 112, Jaycees is owed at least $31,156.87 from Debtor Ursula Lichtenstein.

7.      As set forth in the Complaint, the Manufactured Home, identified as a 1994 Champion Infinity II, with the serial number 09946364387AB, was fraudulently transferred from Ursula Lichtenstein to Susan Browne only month or so before the judgment of $31,156.87 was entered.

8.      Further, Susan Browne's real estate agent has informed me that they have listed the Manufactured Home that was fraudulently transferred to Susan Browne for sale and have a buyer.

2.      I make this declaration in support of the Jaycees Emergency Motion to Intervene in Adversary Proceeding as a Plaintiff and For Ex Parte Pre-Judgment Writ of Attachment against Manufactured Home without Notice or Hearing Pursuant to NRS 31.017 on an Order Shortening Time.

3.      Jaycees is a non-profit subsidized manufactured home community for senior citizens that operates under Chapter 118B of the Nevada Revised Statutes ("NRS 118B").

4.      The Debtor Ursula Lichtenstein ("Lichtenstein") was a resident of Jaycees and owned a manufactured home that was located as Space No. 305 (the "Manufactured Home") in the mobile home park (the "Park").  Lichtenstein signed Mobile Home Lot Lease to live in the Park.

5.      I have reviewed the proposed Complaint in Intervention attached to the Motion as Exhibit A.  I have personal knowledge of the facts upon which the claims for fraudulent transfer are based and assert that they are true and correct.

6.      As set forth in the Complaint in Intervention for a fraudulent transfer under NRS 112, Jaycees is owed at least $31,156.87 from Debtor Ursula Lichtenstein.

7.      As set forth in the Complaint, the Manufactured Home, identified as a 1994 Champion Infinity II, with the serial number 09946364387AB, was fraudulently transferred from Ursula Lichtenstein to Susan Browne only month or so before the judgment of $31,156.87 was entered.

8.      Further, Susan Browne's real estate agent has informed me that they have listed the Manufactured Home that was fraudulently transferred to Susan Browne for sale and have a buyer.

9.      Based on those facts, Jaycees is entitled to a writ of attachment against the Manufactured Home identified in the Complaint in Intervention that should be issued without notice or hearing.

10.      Such a writ should be served on Susan Browne, Charles McKinnon, Jr., and the Manufactured Housing Division.

11.      I declare the foregoing under the penalty of perjury for the laws of the United States.

Dated: <u>April 30, 2025</u>          _____
                                    Robert Deken