WILDE & ASSOCIATES, LLC
Gregory L. Wilde (4417)
7473 West Lake Mead Boulevard, #100
Las Vegas, Nevada 89128
(702) 562-1202
greg@wildelawyers.com
Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>URSULA LICHTENSTEIN,<br><br>                Debtor. | Case No.: 25-10340-nmc<br>Chapter 13<br><br>Adversary No. 25-01110-nmc |
| URSULA LICHTENSTEIN,<br><br>                Plaintiff,<br><br>v.<br><br>SUSAN BROWNE, an individual, and CHARLES M. MCKINNON, JR. an individual,<br><br>                Defendants. | Date of Hearing: May 13, 2025<br><br>Time of Hearing: 11:00 a.m. |

**OPPOSITION TO EMERGENCY MOTION TO 1) INTERVENE IN ADVERSARY PROCEEDING AS PLAINTIFF, 2) FOR EX PARTE WRIT OF ATTACHMENT AGAINST MANUFACTURED HOME WITHOUT NOTICE OR HEARING PURSUANT TO NRS 31.017**

COMES NOW Debtor, by and through undersigned counsel, and files this Opposition to the Emergency Motion to 1) Intervene in Adversary Proceeding as Plaintiff, 2) For Ex Parte Writ of Attachment Against Manufactured Home Without Notice or Hearing Pursuant to NRS 31.017, stating as follows.

I. **Introduction**

The Court should summarily deny both the Motion to Intervene and the request for a Pre-Judgment Writ because they are baseless and improper. A review of the procedural facts is important to demonstrate the unsecured status of the Las Vegas Jaycees Senior Citizen Mobile Home Park **("Movant")** and its complete lack of standing to seek both intervention and a writ.

The Movant is essentially inserting itself in the bankruptcy estate as a "quasi-trustee" or "debtor in possession" when it is nothing but an unsecured creditor.

II. **Procedural Facts**

The Movant is a landlord that obtained a Writ of Restitution prior to the Debtor filing this Chapter 13 case. The Writ of Restitution was to restore the premises located at **505 West Harmon Avenue, Space #305, Las Vegas, Nevada 89103** to Movant <u>*but not*</u> Debtor's Manufactured Home. **("Home").** However, the Movant <u>***did not***</u> obtain a judgment prior to the bankruptcy filing and is simply an unsecured creditor.

Immediately after this bankruptcy proceeding was filed, Movant filed an Emergency Motion to Vacate the Stay in order to complete ***the removal of Debtor*** from the mobile home park. The Court made certain rulings on the record but has yet to sign an order after argument on February 18, 2025. The parties could not agree on the language of an order and have each submitted proposed orders.

It is important to note that both competing orders of the parties contain language vacating the stay …

*"….. **solely for the purpose of executing on the Permanent Writ of Possession** issued by the Las Vegas Justice Court in Case No. 24C008342.*

...

*IT IS FURTHER ORDERED, ADJUGDED AND DECREED that eviction proceedings shall be limited to removing the Debtor from the real property located at 505 West Harmon Avenue, Space #305, Las Vegas, Nevada 89103 and securing the manufactured home on that real property, subject to the Debtor's right to obtain access to the manufactured home so that the manufactured home can be sold."*

(Emphasis added).

Despite the limiting language in both proposed orders, as well as the Court having not signed an order vacating stay as of yet, the Movant has repeatedly ignored the Court's rulings and violated the automatic stay by; **1)** issuing and posting a Notice of Lien on Debtor's Home, which demanded payment and threatened to seize and sale the Debtor's Home, *(See exhibit "A")*, **2)** sending the Constable to the subject property on or about April 17, 2025 to complete an unauthorized lockout of the Debtor from her home, and **3)** unlawfully breaking the Constable's seal on Debtor's front door and entering her Home which is property of the Estate. *(See exhibit "B").*[1]

Movant admitted it prematurely issued the lien in its moving papers[2] and later admitted that prematurely conducted the eviction and voluntarily turned over the keys for the Debtor's reentry into the Home. (*See exhibit "C"*).

Presently, the filing of the Motion to Intervene and seeking a Writ is nothing more than another violation of the automatic stay for it is a *"judicial"* proceeding to *"obtain possession of property of the estate… or…. exercise control over property of the estate*" and further seeking to *"create"* a lien against property of the estate. *See 11 USC 362(d)(1) through (4).*

---

[1] The Court will recall that at an April 8, 2025 hearing on Debtor's Motion for Sanctions, arising from the Movant's improper lien notice, an evidentiary hearing was set to adjudicate Debtor's damages. Undersigned counsel will seek permission from the Court to address these two (2) additional violations of the automatic stay, that occurred after the initial Motion for Sanctions hearing, at the August 13, 2025 evidentiary hearing.

[2] See Movant's "Opposition To Motion To Hold Creditor Las Vegas Jayceees Senior Citizen Mobile Home Park In Contempt For Violation Of The Automatic Stay [DOC 45] at page 6, lines 20-26.

There can be no dispute that the Movant is an unsecured creditor without standing to seek intervention as well as a Writ of Attachment. It would be different if Movant was a purchase money creditor or a secured creditor in relation to the Home. Such creditors have standing to participate in bankruptcy proceedings in order to protect their secured interests. Movant acknowledged in its March 27, 2025 Proof of Claim that it is an unsecured creditor. *See Claim 8-1, Section 2, part 9.*

The Court can take judicial notice that there is absolutely no legal authority allowing an unsecured creditor to obtain a writ of attachment in a bankruptcy setting. Such a ruling would result in preferential treatment of the applicant over all other unsecured creditors.

The tortured history of the overzealous acts by the Movant have caused unnecessary attorney fees and expenses for the 74 year old Debtor living on nothing more than social security. The Court should award Debtor all of the attorney fees and costs expended in defending this onslaught by Movant.

**III. Argument**

***A. Movement does not have standing to participate in this Adversary Proceeding.***

Movant does not have a right to participate in this adversary as it would in a Chapter 11 proceeding. 11 USC 1109(b) of the Bankruptcy Code provides, in part, that a creditor *"may raise and may appear and be heard on any issue"* in a chapter 11 case. 11 U.S.C.A. § 1109. There is no such right or similar section in 11 USC Chapter 13.

The Court can take judicial notice that only a trustee or debtor in possession may bring avoidance actions under §§ 544, 547, and 548 of the Bankruptcy Code, including similar state court remedies, unless a court grants derivative standing to a creditor.

The exclusive power to commence an avoidance action is vested in trustees and debtors-in possession and only allowed to a creditor in their absence. See In re Curry and Sorenson, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986). See also In re Parmetex, Inc., 199 F.3d 1029, 1031 (9th Cir. 1999) *(Trustee stipulated that the Creditors could sue on his behalf giving Creditors standing);* In re Consolidated Indus. Corp., 360 F.3d 712, 716 (7th Cir. 2004) *(Bankruptcy law allows a creditor to bring a derivative claim upon showing the trustee has unjustifiably refused to do so and the creditor obtains leave from the bankruptcy court).*

In an almost identical set of facts to those before the Court, a Pennsylvania bankruptcy court denied a creditor's request to proceed with an avoidance claim in a chapter 13 case under Pennsylvania's Uniform Fraudulent Transfer Act where the debtor conveyed one half of debtor's interest in real property to her daughter *because any avoidance would not benefit the estate.* In re Demeza, 582 B.R. 868, 876-877 (Bankr. M.D. Pa. 2018).  Movant blatantly seeks intervention to benefit only itself and not the estate.  Therefore, for this undisputable fact alone, the Court should deny the request.

Further, this chapter 13 Debtor has the exclusive right under 11 USC 522(h) to avoid a transfer of the subject Home since the trustee has not elected to do so.  There is no reason to have Movant involved.

***B. The Movant is not entitled to intervene under Bankruptcy Rule 7024.***

The Movant is not entitled to intervene under Bankruptcy Rule 7024 since it can not meet the requirements therein.  All Movant has is an unsecured claim in these proceedings and cannot make a claim to the Home.  The interest is completed unrelated to Debtor's interest in the Home or the Debtor's property right in seeking an order returning it to the estate. Since Movant's interest is not directly related to the Home, intervention is not proper.

Further, the Movant has filed a proof of claim which is the only protectable interest it has in these proceedings. Movant must show that being denied intervention will *"impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest". See Bankruptcy Rule 24(a)(2).* Movant's request fails in both circumstances. Movant has done all it can to protect its interest in these proceedings by filing a proof of claim and being excluded from the adversary will not "impair" or "impede" it ability to protect that interest. Movant attempts to create a special right in the mobile home above and beyond the rights of all other unsecured creditors that does not exist.

Secondly, Debtor's prosecution of this case, under the watchful eye of the Court, "adequately represents" Movant's unsecured interest. As a practical matter, Debtor adequately represents the estate's interest by seeking to bring the Home back into the estate, where one of two things can happen. Debtor will either be able to claim a homestead exemption in the Home or it will be sold and benefit the unsecured creditors on a pro-rata basis. Adding Movant to the mix only increases the expense of the proceedings and serves no purpose that is not already served.

In summary, Movant is asking for extraordinary relief, under the guise of a motion to intervene, by claiming it is somehow in a rare situation. The bankruptcy code was designed to put unsecured creditors in the situation Movant finds itself in. By way of example, Movant argues:

*"Jaycees has been left in a difficult situation. The bankruptcy keeps Jaycees from bringing a fraudulent transfer claim because the Debtor would be a necessary party." (See Motion page 7, lines 19-20).* Keeping unsecured creditors from brining actions against a debtor is an integral power of the automatic stay found in 11 USC 362.

*"The Debtor appears to be solely interested in getting the home back into the estate to continue to keep creditors from attaching it." (Id. at page 7, lines 21-23).* Again, debtors seek

protection under the automatic stay for this purpose and making this argument for the proposition that intervention is proper since a creditor's interest is "impaired" or "impeded" is flawed. The bankruptcy code was primarily designed to "impair" and "impede" creditor efforts.

Allowing an unsecured creditor to intervene based on these arguments ignores common everyday bankruptcy guidelines and the spirit of the bankruptcy code. It also ignores the exclusive powers of trustees and debtors to recoup assets into the estate. Finally, it would result in duplicate efforts and costs of bankruptcy proceedings.

### *C. The Movant is not entitled to a Pre-Judgment Writ of Attachment.*

The Movant is not entitled to a Pre-Judgment Writ of Attachment. The motion is devoid of any bankruptcy statute or bankruptcy case law allowing such an award. The only legal reference is NRS 31.017 followed by a generic request for the writ.

In this bankruptcy context, there is absolutely no basis or reason to allow an unsecured creditor a prejudgment writ of attachment. Such a writ would require the posting of a bond which the Movant has not offered to do. Even more telling, the Court can take judicial notice that such a writ would only benefit the Movant resulting in preferential treatment of a sole creditor.

The request also violates the notion of due process since the other creditors have not been given an opportunity to raise an objection or further seek to improve their individual interests in this case. This includes the Internal Revenue Service which has filed an unsecured priority claim for $1,547.04 that trumps Movant's unsecured claim. *See IRS Claim No. 10, filed 4/23/2025*

WHEREFORE, Debtor prays that the Court deny the Movant's motion and award attorney

///

///

///

1   fees to Debtor for having to respond to the baseless requests.

Dated this 9th day of May 2025.

WILDE & ASSOCIATES, LLC

 /s/ Gregory L. Wilde
Gregory L. Wilde, Esq.
Attorney for Debtor

Page 8 of 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "A"

**DEPARTMENT of BUSINESS AND INDUSTRY**
**NEVADA HOUSING DIVISION – MANUFACTURED HOUSING**
**1830 College Pkwy, #200, Carson City, Nevada 89706**; Phone: 775-684-2940
3300 W. Sahara Ave. #320, Las Vegas, Nevada 89102; Phone: 702-486-4135
Website: housing.nv.gov

## NOTICE OF 108 LIEN TL-108 (a)
MANUFACTURED HOME/ MOBILE HOME / COMMERCIAL COACH

Lien 108 is a legal process, and in accordance with NRS 7.285 the Division cannot provide legal advice. Please contact an attorney for instructions.

**PLEASE TYPE**

*-IMPORTANT-*
A landlord lien for unpaid rentals and utilities may not exceed $2,500 or the total amount due, whichever is less. The Division will not accept a Notice of Lien from a landlord if the amount is more than $2,500. Mail/Deliver to the Carson City Office with Fee of $60.00.

Email Address (required): jeanne@lienonmesister.com

Phone Number (required): 702-227-5722

TO **Ursula Lichtenstein or Susan Browne**
(Name of registered owner)

Address **5805 W Harmon Ave #305**   **Las Vegas**   **NV**   **89103**
Street Address   City   State   Zip Code

TO **Charles Michael McKinnon Jr**
(Legal owner, if different from registered owner)

Address **10806 Maltese Falcon Ave**   **Las Vegas**   **NV**   **89129**
Street Address   City   State   Zip Code

TO _____
(Person holding a security interest)

Address _____
Street Address   City   State   Zip Code

TO _____
(Tenant or subtenant)

Address _____
Street Address   City   State   Zip Code

TO **United States Bankruptcy Court (Case #25-10340-nmc)**
(Name of any other person known to have or to claim an interest in the Manufactured home, mobile home or commercial coach described below)

Address **300 Las Vegas Blvd South**   **Las Vegas**   **NV**   **89101**
Street Address   City   State   Zip Code

TO: State of Nevada, Department of Business and Industry, Nevada Housing Division, Manufactured Housing

*PLEASE TAKE NOTICE THAT,*
**Robert Deken** of **5805 W Harmon Ave, Las Vegas, NV  89103**,
(Name of lien claimant)   Address

Nevada, in his/her own behalf or on behalf of (Name) **Las Vegas Jaycees Senior Citizens MH** a business whose address is **5805 W Harmon Ave, Las Vegas, NV  89103**, and on whose behalf and in the capacity of **Property Manager**, claims a lien pursuant to the provisions of NRS 108.267 to
(Title or position)

108.360, inclusive, on the manufactured home, mobile home or commercial coach described as follows:

Year **1994**   Make **Champion**   Model **Infinity II**
Size **624" x 142"/612" x 142"**   Serial No. **09946364387AB**

The reason lien is claimed for **unpaid storage** incurred by (Name) **Ursula Lichtenstein**
in the following amounts:

Rent: $_____ for period _____ to _____, became due on _____
Utilities: $_____ for period _____ to _____, became due on _____
Charges for towing, storing, maintaining, keeping, or repairing a manufactured home, mobile home or commercial coach, or for furnishing accessories, facilities, services or supplies therefore *(please describe)*: **storage**

$ **$ 1,380.00** became due on **1/1/25**
Date

Costs of lien (Please *describe*): **$104.04 (Filing $60; Notary $15; Postage $29.04)**
Total Currently Due: $ **1493.72**. In addition to this amount, a further claim may accrue as follows: (Describe any amounts which may accrue after date of Notice of Lien and the rate at which they will accrue.)
**storage $610/month plus late fees per statute**

Demand is hereby made that the total amount of $ **$ 1,493.72** together with any amount hereafter accrued, be paid on or before **5/30/2025**.

Date Specified Pursuant to NRS 108.272(4)

TL-108A (Rev. 03/2021)   Page 1 of 2

Unless this amount is paid within the time specified, the above-described manufactured home, mobile home or commercial coach shall be advertised for sale, and sold by auction at a time and place to be specified pursuant to the provisions of NRS 108.267 to 108.360, inclusive, to satisfy the lien in the amount claimed herein, together with any further claim that may accrue and all costs of enforcing the lien.

You may contest the validity of the lien by filing a Notice of Opposition in the Justice Court on the form provided by the **Justice Court**, or you may use any other legal procedure available to you (see NRS 108.350). (The procedures for contesting this lien are set forth in NRS 108.350 and NRS 108.355, reprinted below.)

If you challenge the lien by court process, including the Justice Court process, and lose, the court could order that you pay for the other side's attorney. If that happens such attorney's fees can be added to the lien amount that you have to pay.

_____
Signature

(For Notary use only)

State of NEVADA    County CLARK
Subscribed and sworn to before me,
ROXANN NORBERG
(Name of Notary Public)

on this 18 day of FEB, 20 25
by ROBERT DEKEN

_____
(Printed name of party appearing before Notary)

_____
Notary Public Signature

ROXANN NORBERG
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 11-4350-1
Appt. Expires 3-24-2027

***** NOTE: This form must be completed in its entirety. *****

**In accordance with:**

**NRS 108.350 Validity of lien may be contested; liability of claimant after sale.** Nothing contained in NRS 108.270 to 108.367, inclusive, precludes:
1. The owner of any motor vehicle, aircraft, motorcycle, motor or aircraft equipment, aircraft parts, trailer, recreational vehicle, mobile home or manufactured home; or
2. Any other person having an interest or equity in the property, from contesting the validity of the lien. All legal rights and remedies otherwise available to the person are reserved to and retained, except that, after a sale has been made to an innocent third party, the lien claimant is solely responsible for loss or damage occasioned the owner, or any other person having an interest or equity in the property, by reason of the invalidity of the lien, or by reason of failure of the lien claimant to proceed in the manner provided in those sections.

NRS 108.355 Contesting validity of lien on mobile home or manufactured home.
1. A person contesting the validity of a lien on a mobile home or manufactured home may file a notice of opposition to the lien in the justice court in whose jurisdiction the mobile home or manufactured home is located. The notice of opposition must be filed within 5 days after the person filing the notice receives the notice of sale by auction, must be made on a form provided by the clerk of the justice court and must include the facts supporting the notice. The person filing the notice shall serve certified copies of it upon the lien claimant and the Housing Division of the Department of Business and Industry.
2. Upon the filing of the notice of opposition to the lien, the justice of the peace shall schedule a hearing on the notice, which must be held as soon as practicable but not sooner than 5 days after service of the notice. The justice of the peace shall affix the date of the hearing to the notice and order that a copy be served upon the lien claimant within 5 days after the date of the order.
3. The justice of the peace shall either dismiss the objections to the lien claim, declare the lien invalid or declare the amount of the lien if it is different from that described by the lien claimant.
4. After receipt of a notice of opposition to a lien or other notice pursuant to any proceeding to contest the validity of a lien, the Housing Division of the Department of Business and Industry shall not transfer the title to the mobile home or manufactured home that is the subject of the lien until the matter has been adjudicated.
5. This section does not affect the rights of a secured party pursuant to chapter 104 of NRS.

**NRS 108.2735 Liens on mobile homes and manufactured homes: Expiration.** A lien asserted against a mobile home or manufactured home expires 1 year after it is filed with the Housing Division of the Department of Business and Industry.

**NRS 7.285    Unlawful practice of law; criminal penalties; initiation of civil action by State Bar of Nevada.**
   1.   A person shall not practice law in this state if the person:
   (a) Is not an active member of the State Bar of Nevada or otherwise authorized to practice law in this state pursuant to the rules of the Supreme Court; or
   (b) Is suspended or has been disbarred from membership in the State Bar of Nevada pursuant to the rules of the Supreme Court.
   2.   A person who violates any provision of subsection 1 is guilty of:
   (a) For a first offense within the immediately preceding 7 years, a misdemeanor.
   (b) For a second offense within the immediately preceding 7 years, a gross misdemeanor.
   (c) For a third and any subsequent offense within the immediately preceding 7 years, a category E felony and shall be punished as provided in NRS 193.130.
   3.   The State Bar of Nevada may bring a civil action to secure an injunction and any other appropriate relief against a person who violates this section.
   (Added to NRS by 1963, 385; A 1999, 1333)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "B"



#:24C008342
WA NING – KEE P OU
THESE PREMISES 'E BEEN SEALED BY A LAS VEGAS STICE COURT EVICTION ORD
S A CRIME TO RE-ENTE E PREMISES WITHOUT THE AUTHORIZATI ON OF THE LAS VEGAS JUSTICE C
PERMISSION OF THE OWNER.
NIMUM PENALTY FOR U BREAKING INTO VACANT PROPERTY (I NRS 205.0813) OR UNLAWFUL OC
ROPERTY (NRS 205.8017 ENCE OF UP TO ONE YEAR IN THE CO UNTY JAIL, A FINE OF UP TO $2,
EQUENT OFFENSES AR ECT TO SENTENCING FOR A CATEGORY D FELONY WITH A SENTENCE OF
TATE PRISON, A FINE OF UP TO $5,000, OR BOTH.
VIOLATION OF THE ORDER IS A MISDEMEANOR AS SPECIFIED IN NRS 22.020 AND NRS 199.
LONGO 958 5805 W HARMONY #305
DEPUTY CONSTABLE P# EVICTIO
OFFICE OF THE EX-OFFICIO CONSTABLE 301 E. CLARK AV AS, NV 89101 (702)-455-40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "C"

**From:** Gregory Wilde <greg@wildelawyers.com>
**Sent:** Tuesday, April 22, 2025 12:07 AM
**To:** Todd W. Prall <TPrall@hutchlegal.com>
**Subject:** Lichtenstein v. Las Vegas Jaycees

**CAUTION:** This email originated from outside the organization.

Todd:

As mentioned in my phone call today, Ursula called me from CDCC and is being released tomorrow. Rumor has it that Mr. Deken cut the realtor's lock box off of my client's trailer and changed the locks. If that is the case, your client has continued to violate the automatic stay and should immediately provide me with keys to any locks that have been changed.

In the event that Ursula is denied access to her trailer tomorrow or thereafter until the eviction is completed, I have instructed her to contact me to document further violations by your client. I will then reach out to you. She has found a place to stay and will only be accessing the trailer to remove her belongings. If you want to set up some reasonable parameters, please let me know. She has been instructed to ignore all communications from Robert Deken or other tenants in the park. If they need to communicate with her, please do so through my office.

Regards,
Greg

**Gregory L. Wilde, Esq.***
Wilde & Associates, LLC
7473 W. Lake Mead Blvd. Suite 100
Las Vegas, NV 89128
702-562-1202
*Licensed in both Nevada (#4417) and Utah (#6151)*

**From:** Todd W. Prall
**Sent:** Tuesday, April 22, 2025 3:01 PM
**To:** Gregory Wilde
**Cc:** Jeffrey R. Hall; Bobbie Benitez
**Subject:** RE: Lichtenstein v. Las Vegas Jaycees

Greg,

I called and left you a message.

I spoke to my client again. The easiest way we believe to handle this is to allow her access to her home anytime during business hours between 8 a.m. and 5 p.m. We would prefer to have our security people just let her into the home when she wants to come and then have her just tell them when she is gone for the day so they can secure the home.

Heather Campos – who is Mr. Dekan's supervisor told me that Ursula could also have her cell phone to call or text her with any issues. I will get that to you here shortly or once we are able to speak again.

We would not have someone with her the whole time. Just open the door and then secure it when she leaves. We think this would be best for everyone. I believe she can communicate with staff at the park so long as it relates to handling her affairs in the home under the criminal proceedings.

Please call me on my cell at ▮▮▮▮▮▮▮▮▮▮

Todd W. Prall
Senior Counsel



HUTCHISON & STEFFEN, PLLC
(702) 385-2500
hutchlegal.com